# PORTER v. HUNTER.

No. 3748. Decided April 28, 1922. Rehearing denied June 3, 1922.
(207 Pac. 153.)

1. BROKERS—EVIDENCE SHOWED FAILURE TO PRODUCE CUSTOMER
WITHIN TIME LIMIT. In action by broker for commission on the
sale of sheep, evidence *held* to show contract not completed
within the time limit.

2. WITNESSES—EVIDENCE ON CROSS-EXAMINATION PART OF EVIDENCE
IN CHIEF. Evidence elicited from a party on cross-examination
must be regarded as part of the evidence given by him in chief.

3. BROKERS—BURDEN ON BROKER TO SHOW FULFILLMENT OF HIS CON-
TRACT. The burden of proof is on the broker suing for com-
mission to establish that he fulfilled his contract.

4. BROKERS—RULE AS TO BROKER'S PERFORMANCE OF CONTRACT
WITHIN TIME LIMIT AS AFFECTING RIGHT TO COMMISSIONS
STATED. To entitle a broker to his commissions, he must prove
not only the actual rendition of services called for by his con-
tract, but complete performance thereof within the time stipu-
lated or before expiration of extension of time agreed on, but
where there is no fraud or bad faith on the part of the em-
ployer and the broker does not perform within the time limit,
the employer, after expiration thereof, without incurring lia-
bility to the broker, may contract with the customer intro-
duced by him within the period for performance, either on the
same terms or on others more or less favorable than those that
the broker was authorized to offer, and the mere fact that he
finds or introduces a prospective customer within the time limit
does not entitle him to commissions where payment thereof is
conditioned on timely performance of additional duties.

5. BROKERS—RULE AS TO PERFORMANCE BY BROKER WITHIN TIME
LIMIT HELD TO APPLY TO PARTICULAR CASE SO AS TO REQUIRE RE-
VERSAL OF JUDGMENT IN HIS FAVOR. Where no fraud or bad
faith is charged to the owner or any collusion between him
and a purchaser to deprive a broker of his commission, and
it appears that he failed, as his contract required, to find a
purchaser for sheep before the time the owner was required to
put them on feed, the rule that, when a vendor and broker agree
on a time in which property is to be sold, no commission is
payable unless the sale is made within the time, provided there
is no collusion or connivance with the prospective purchaser

to prevent a sale during the specified time, applies and a judgment in favor of the broker in such case must therefore be reversed.[1]

Appeal from District Court, Third District, Salt Lake County; *Wm. M. McCrea,* Judge.

Action by I. N. Porter against John E. Hunter. From judgment for plaintiff, defendant appeals.

REVERSED, and new trial granted.

*Irvine & Thurman,* of Salt Lake City, for appellant.

*Chris Mathison,* of Salt Lake City, for respondent.

WEBER, J.

Plaintiff, a live stock broker, sued for a commission claimed by him for securing a purchaser for a herd of sheep owned by defendant. The case was tried to the court without a jury, and from a judgment in favor of plaintiff defendant appeals.

In his complaint the plaintiff alleges that on or about January 15, 1920, he was employed by the defendant to find a purchaser for 2,200 head of sheep, and the defendant agreed to pay him a commission of 25 cents per head if plaintiff found a person ready, able, and willing to purchase the sheep at a price and upon terms satisfactory to defendant, and that plaintiff found a purchaser to whom the sheep were sold by the defendant. In addition to denying the alleged terms of the agreement as set forth in the complaint, and denying that defendant was indebted to plaintiff, the answer alleges that on or about December 20, 1919, defendant agreed, if plaintiff would secure a purchaser for 2,200 head of sheep before the time when defendant would be required to put them on feed, the purchaser to take the sheep, at cost price to defendant, all provisions, consisting of hay, potatoes, and other

---

[1] *Burt* v. *Stringfellow,* 48 Utah, 330, 159 Pac. 527.

supplies theretofore purchased by defendant for the handling and care of the sheep, that defendant would give plaintiff all moneys received from the sale thereof in excess of $14.75 a head. The answer further alleges that defendant was required to, and did, put the sheep on feed on or about December 26, 1919, but that plaintiff failed, within the time provided in said offer, or at all, to secure a purchaser.

The undisputed testimony supports the affirmative allegations of defendant's answer. The defendant's testimony was, in substance, as follows: That he met plaintiff on December 22, 1919, in Salt Lake City, and told him he had 2,200 head of sheep, 440 tons of hay, 7 tons of corn, and a ton of potatoes; that, if a sale could be made before the sheep were put on feed, he would sell the sheep at $14.75 a head and the provisions at cost price to him; that he had made arrangements to graze the sheep until December 25th or January 1st, and expected to put them on feed at that time; that in that conversation plaintiff said he had a party who would take the sheep right away at $15 per head and the provisions at cost price; that thereupon defendant stated that he did not care what plaintiff made out of the sheep, provided the sheep netted him $14.75 a head and the sale was made before they were put on feed; that plaintiff then produced J. S. Ostler, with whom defendant entered into negotiations, telling Ostler he would give him until Christmas or the first of the year; that defendant did not hear from Ostler until January 3d, and at that time the sheep and provisions were still unsold. He thereupon requested Ostler to go out and look at them. On January 14th he received a telegram to meet Ostler at Nephi on the 19th at which time and place a contract was entered into covering the sheep and the remaining provisions. There were eight stacks of hay on hand at the time the sheep were put on feed, and at the time of entering into the contract three of the stacks had been consumed. Ostler took four of the remaining five stacks. About 156 to 160 tons of hay had been consumed between the time the sheep were put on feed and the time they were taken over by Ostler. The price of hay was $15 per ton, making a total

for 156 tons of $2,340, for any part of which Ostler refused to reimburse defendant. Defendant further testified that he was also put to other expense in feeding and caring for the sheep between the time they were put on feed and the time they were taken over by Ostler, for which expenses Ostler likewise refused to reimburse him.

J. S. Ostler, who finally purchased the sheep, testified that some time in December, 1919, he went to the hotel to meet the defendant at plaintiff's request, and that he and the defendant then entered into negotiations for the purchase of the sheep. The witness told defendant that there were others interested with him, and that he would have to consult them; and the defendant then stated that he would give him until the end of the year. Mr. Ostler did not talk with defendant again until after the first of the year, when he called defendant by phone and asked him whether the sheep were still for sale, and upon being told that they were Ostler said that he would go and examine them. After seeing the sheep he met the defendant at Nephi, and on January 19, 1920, they entered into a written contract for the purchase of the sheep and certain provisions, and on the 26th of the same month the sheep were delivered to the purchaser with the provisions then on hand with the exception of one stack of hay which he refused to take.

On cross-examination the plaintiff was asked whether anything was said about the sheep going to be put on feed right away, and that the sheep must be sold, if sold at $15 per head, before they went on feed. Plaintiff answered that there may have been something said to that effect, and that he would not swear whether that was said or not, but that it may have been said in the offer to him. Plaintiff further testified that he did not know when the sheep went on feed.

Plaintiff's testimony is no stronger than what he testified on cross-examination, and the evidence elicited from him on cross-examination must be regarded as part of the evidence given by him in chief. *Wilson* v. *Wagar*, 26 Mich. 452.

Defendant testified definitely to the terms of the contract,

and, there being no denial by plaintiff on his cross-examination or at any time, it is beyond cavil that the contract was as alleged in defendant's answer, and that the contract as thus established by the testimony was not fulfilled by plaintiff. The burden of proof was upon plaintiff to establish that he had fulfilled the contract. Not a shred of evidence was produced by the plaintiff tending to prove that he procured or produced a purchaser who bought before the sheep had been put on feed. On the contrary, it can be fairly inferred from the evidence that the sheep were put on feed before the 1st of January, 1920. About $2,000 worth of hay had been fed by January 26, 1920. The hay was on hand when plaintiff and defendant first met and when Ostler, the **3** purchaser, was introduced to defendant by plaintiff. According to the contract of employment, the hay on hand before any of it was fed was to be taken and paid for by the purchaser. The purchaser did not pay for the hay, and when he on January 1st or 2d made inquiry about the sheep the time limit had expired.

As applicable here, the rule of law is as stated in 4 R. C. L. p. 305, § 47:

"To entitle a broker to the payment of his commissions, it is essential that he prove not only the actual rendition of all the services called for by his contract of employment, but that he complete the performance thereof within the time stipulated or before the expiration of such additional period as may have been granted by the employer in extension of that originally agreed upon. * * * But where there is no fraud or bad faith on the part of the employer and the broker does not perform within the time limit, the employer after the expiration thereof may contract with a customer introduced by the broker within the period for performance, either upon the same terms or upon others more or less favorable than those the broker was authorized to offer, without incurring any liability to compensate the latter for his services. The mere fact that a broker finds or introduces a prospective customer within the period prescribed is not sufficient to entitle him to his commissions where payment of the latter is conditioned upon the timely performance of additional duties."

See, also, 9 C. J. pp. 593, 606; 2 Mechem on Agency (2d Ed.) § 2427; *Fultz* v. *Wimer,* 34 Kan. 576, 9 Pac. **4** 316; *Davis & Co.* v. *Aabling,* (Wash.) 202 Pac. 2.

No fraud and no bad faith are charged to the defendant nor any collusion between him and the purchaser to deprive the broker of his commission. The doctrine announced in *Burt* v. *Stringfellow*, 48 Utah, 330, 159 Pac. 527, and other Utah decisions cited therein, to the effect that, when a vendor and a broker agree upon a time limit during which property is to be sold, no commission is payable unless the sale be made within the time limit, provided there is no collusion or connivance with the prospective purchaser to prevent a sale within the specified time, applies to this case, and, under the evidence as it appears in the record, necessitates a reversal of the judgment of the district court.

The judgment is therefore reversed, and a new trial granted. Costs on appeal are taxed to respondent; other costs to abide final result.

CORFMAN, C. J., and GIDEON and FRICK, JJ., concur.

THURMAN, J., being disqualified, did not participate in the disposition of this cause.