## FLINDERS v. HUNTER.

No. 3803.   Decided June 27, 1922.   (208 Pac. 526.)

1.  APPEAL AND ERROR—OBJECTION THAT ANSWER LACKED VERIFICA-
    TION CANNOT BE MADE FOR FIRST TIME ON APPEAL.  Where the
    answer lacked verification, the plaintiff cannot go to trial and
    then make the objection that the answer lacked verification
    for the first time on appeal.

2.  TRIAL—SURPRISE AT TESTIMONY OF WITNESS HELD NOT GROUND
    OF NEW TRIAL.  In broker's action for commissions, it was
    not error to refuse a new trial to plaintiff on the ground of
    surprise at the testimony of a witness who testified that he
    did not go out with the plaintiff to see the defendant's land
    with the view of examining it as a prospective purchaser.

3.  APPEAL AND ERROR—FINDING OF TRIAL COURT SUPPORTED BY EVI-
    DENCE NOT DISTURBED.  The credibility of witnesses and the
    weight to be given their statements is within the exclusive
    province of the trial court, and, where there is some substan-
    tial evidence in support of the findings made by the court, the
    appellate court cannot interfere.

4.  BROKERS—OWNER MAY REVOKE AGENCY ANY TIME BEFORE SALE.
    Where the appointment of a broker is without any considera-
    tion, although the authority to sell is in terms exclusive and a
    fixed period of time is named, the owner can terminate the
    authority at any time before a sale is effected, and the broker
    has no claim for commission or otherwise unless he proves
    that the authority was revoked in bad faith for the purpose of
    selling to one of his customers by the owner himself to avoid
    the payment of the commission.

Appeal from District Court, Second District, Weber Coun-
ty; *J. N. Kimball*, Judge.

Action by Fred Flinders against Andrew Hunter.  Judg-
ment for defendant, and, from an order refusing a new trial,
plaintiff appeals.

AFFIRMED.

Appeal from Second District

*Joseph E. Evans,* of Ogden, for appellant.

*Halverson & Pratt,* of Ogden, for respondent.

FRICK, J.

The plaintiff brought this action in the district court of Weber county, Utah, to recover a real estate broker's commission. In his complaint he in substance alleged that at the time stated in 'the complaint he was engaged in business at Ogden, Utah, under the name and style of Fred Flinders Company; that on March 15, 1921, plaintiff and defendant entered into a certain agreement, which, after describing the land, the crops usually grown thereon, the buildings and sale price, to wit, $7,000, and the terms of payment in case a sale be made, provides:

"For and in consideration of one dollar ($1.00), the receipt of which is hereby acknowledged, I hereby appoint Fred Flinders Company exclusive agents to make sale of the property above described for the price and upon the terms above stated, or at a less price, or different terms, agreed upon by the owner of the property; and you. are hereby authorized to accept a deposit, to be applied on the purchase price and to execute a binding contract for sale on my behalf, which will be binding on me, my heirs, executors, administrators or assigns. If a customer furnished by them within said term, buys said property within said term, or at any time thereafter, I agree that they shall have and may retain from the proceeds arising from such sale 5 per cent. commission on sale price and all of the consideration for which said property is sold over and above the price above specified, and in case said property is sold within said term either through us or any other person, then and in that case I promise to pay 5 per cent. on the whole amount for which said property may be sold.

"In event of sale I agree to convey by warranty deed and furnish good title, with abstract.

"This contract to continue until April 15, 1921, and thereafter until terminated by giving them as agents 10 days' notice in writing.

"[Signed]   Andrew Hunter."

In paragraph 3 of his complaint the plaintiff alleged what he had done in pursuance of said agreement; that he had taken one Joseph Welch, a prospective purchaser, to view the

premises in question; that "on or about April 16, 1921, and while said contract and agreement was in full force and effect, the defendant sold and conveyed said property to said Joseph Welch for the sum of $6,000, and that said sale was made as a result of the efforts of the plaintiff, and that the plaintiff is entitled to a commission of $300"; that no part thereof has been paid. Wherefore plaintiff prayed judgment for said sum of $300.

The defendant in his answer to the complaint admitted the execution and delivery of the alleged agreement. He denied each and every allegation contained in paragraph 3 of said complaint, except, stating his denial in his own language, that—

"On April 19, 1921, or thereafter, said defendant did sell and convey the property referred to in said paragraph to one Joseph Welch for the sum of $6,000."

The defendant also set up two affirmative defenses as follows:

"Further answering said amended complaint, said defendant alleges that the contract or agreement mentioned in said amended complaint, a copy of which is annexed to the original complaint in this action, was without consideration; that said defendant did not receive from the plaintiff the consideration stated therein, or any other consideration, nor has said defendant at any time received any consideration for said contract, or for the promises or covenants therein made by him.

"For a further defense to plaintiff's action said defendant alleges that on the 14th day of April, 1921, prior to the sale made by said defendant to said Joseph Welch, said defendant revoked the authority of the plaintiff granted to him by said agrement as defendant's agent and notified the plaintiff that his authority, if any he had under said agreement, to effect a sale of said property, or procure a purchaser therefor, should cease and terminate on the —— day of April, 1921."

Upon the foregoing issues the case was tried to the court without a jury. At the conclusion of the trial the court, in substance found that on March 15, 1921, the defendant "executed and delivered to the plaintiff the instrument referred to in plaintiff's complaint"; that no consideration whatever passed between the parties, and "that said instrument was

a mere written authority to the plaintiff to make a sale of defendant's property as therein set forth; that on the 14th day of April, 1921, the defendant notified the plaintiff that he would give the plaintiff until the 15th day of April, 1921, within which to effect said sale and no longer; that on or after the 16th day of April, 1921, the defendant sold said property to one Joseph Welch for the sum of $6,000; that said Joseph Welch was not a purchaser procured by the plaintiff, nor was the plaintiff in any way instrumental in effecting said sale, nor was said sale made as the result of the efforts of the plaintiff; on the contrary, the said sale was effected by the defendant and as the result of his efforts alone.'' As conclusions of law the court found that plaintiff was not entitled to any commission and that judgment be entered in favor of the defendant. Judgment was duly entered in favor of the defendant, from which plaintiff prosecutes this appeal.

The plaintiff assails the findings of the court as not being sustained by the evidence and as contradicting ''the express terms of the written instrument between the parties.'' The conclusions of law are also assailed as being ''contrary to law and not supported by the evidence.'' The judgment, it is asserted, is ''contrary to law.'' It is also urged that the court erred in denying plaintiff's motion for a new trial and that appellant's answer ''is sham and frivolous because not verified,'' and, further, that it does not state sufficient facts ''to constitute a defense.''

It is more convenient for us to consider and dispose of the minor assignments first, and we shall do so.

No objection of any kind appears in the record that defendant's answer was not verified; nor was there any demurrer or objection interposed to the answer. While it is true that our statute provides that if a complaint be verified other pleadings in the action must also be verified, yet it is also true that either party may waive strict compliance with the provisions of the statute. In case an answer is not verified when it should be, the plaintiff may not go to trial and make the objection that the answer lacked verification for the first time in this court. By pursuing such a course he waives the

defect and will not be heard to complain. Had he objected in the court below at the proper time and in a proper manner, the defect could easily have been cured by making a verification, and in default thereof the court could have stricken the answer. Plaintiff's assignment in that regard must therefore fail.

Nor is there any merit to the contention that the answer did not state facts sufficient to constitute a defense.

Nor did the court commit prejudicial error in denying plaintiff's motion for a new trial, notwithstanding the affidavits filed on his behalf that he was surprised by the testimony of the "witness Welch" in testifying that the latter did not go out with the plaintiff to see the defendant's land with the view of examining it as a prospective purchaser. All that the matter referred to in the affidavits amounted to was that there was a sharp conflict between the statements of plaintiff on the one hand and the witness Welch upon the other respecting the object and purpose for which the witness Welch and the plaintiff visited the land in question at the time referred to in the testimony. Welch did not mislead the plaintiff in any way, nor did he state before the trial that he would testify to a certain state of facts and then at the trial change his statements and state the facts to be different or to the contrary. There is therefore no merit to this assignment.

Nor can the assignment be sustained that the court's findings are contrary to or not supported by the evidence. On some of the material facts the statements of plaintiff and his witnesses are in direct conflict with the statements of the defendant and his witnesses. It was the exclusive province of the district court to pass upon the credibility of the witnesses and the weight to be given to their statements. There is some substantial evidence in support of every essential finding made by the court, and in view of that we cannot interfere with the court's findings.

This brings us to the principal, indeed the only real, question in the case, which, in view of the pleadings and findings, is purely a question of law.

We remark that in considering the legal questions involved in this case it is important to keep in mind (1) that no consideration is pleaded in the complaint; (2) that the complaint contains no allegations of fraud or bad faith on the part of the defendant in terminating plaintiff's authority to sell or in selling the property himself, and (3) that the complaint proceeds entirely upon the theory that the defendant was powerless to terminate plaintiff's authority at the time it was terminated without becoming liable to the latter for the alleged commission.

In view that there seems to be some confusion in some quarters, and especially among real estate brokers and their attorneys, with respect to the rights of the owners of property who have listed the same with brokers for sale to terminate the broker's authority to sell and the legal consequences following such termination, the writer, in view of the occasion presented in this case, has felt impelled to enter into an examination of those questions more at length and with greater circumspection than he ordinarily would.

The principle governing the relationship of owner and broker is well established, and, ordinarily, their respective rights can be determined without much difficulty. The relationship existing between an owner and the broker is that of principal and agent with all the rights and liabilities ordinarily incident to that relationship. In view, therefore, that the agent is the creature of the principal and the authority of the former depends upon the will of the latter, the relationship can last no longer than the principal wills that it shall last. True, there are some exceptions to the rule just stated with respect to the effects growing out of the relationship; but, as we shall see, they have no application whatever to the case at bar.

The governing principle is well and clearly stated by the author in 1 Mechem on Agency (2d Ed.) § 563, in the following words:

"The authority of an agent to represent a principal depends ordinarily wholly upon the will and license of the latter. It is the act of the principal which creates the authority; it is for his benefit and to subserve his purposes, that it is called into being;

and, unless there is some other element present, as, for example, that the agent has acquired with the authority an interest in the subject-matter, it is in the principal's interest alone that the authority is to be exercised. The agent, obviously, except in the instance mentioned, can have no right to insist upon a further execution of the authority if the principal himself desires it to terminate.

"It is the general rule of law, therefore, that the authority of the agent may be revoked by the principal at his will at any time, and with or without good reason therefor. Authority of this nature is often termed a bare or naked power; and it is not to restate the general rule in different form to say, as it is so often asserted, that a bare power is revocable at the will of the principal at any time.

"This power to revoke exists when the state is the principal as well as where the principal is a private person.

"An alleged custom that an authority otherwise revocable shall be irrevocable is said to be unreasonable and void."

As a matter of course, where the agent has in part executed the authority conferred, the principal is bound to that extent; and especially as to third persons. Moreover, to the extent that the agent has executed the authority he may have an action for "reimbursement for what has thus been already done." See section 564.

Again, the author, in section 565, says:

"The mere fact that an authority, which from its nature would otherwise be revocable at the will of the principal, is called 'exclusive,' or 'irrevocable,' will not change the rule. It cannot be made irrevocable merely by calling it so, and unless given as security or coupled with an interest, in the sense to be hereinafter explained, such an authority may be terminated as in any other case."

Further, in section 566, the author says:

"And even the fact that the principal may have expressly agreed that the agency shall continue for a certain period will not prevent his revoking the authority before the expiration of that time, if not coupled with an interest or otherwise irrevocable as hereinafter explained; but he will be liable to the agent for the damages which the agent sustains on account of the revocation contrary to the agreement."

Whether the principal is liable in damages or not, however, depends upon whether the authority conferred is coupled

with an interest. If, as in this case, it is a mere naked authority, then there is no liability.

The author points out the legal distinction between the appointment of a broker and a contract of employment. In view that the distinction sufficiently appears from the excerpts quoted, it is not necessary to remark further upon that phase.

In the case at bar, as before pointed out, the plaintiff relied entirely upon the authority conferred upon him by the alleged agreement which he pleaded in full in his complaint. He pleaded no consideration for the appointment although he attempted to prove one at the trial. The court, however, expressly found that the alleged agreement was not supported by any consideration whatever. The question respecting an appointment upon a valid consideration is therefore not in the case.

The next question, therefore, is: Was plaintiff's appointment coupled with an "interest" as that term is usually understood? That question has also many times been considered by the courts and is set at rest. The law with respect to that matter is well stated in Mechem on Agency (1st Ed.) § 207, in the following words:

"Thus where one is given authority to sell the lands or other property of another, and is to have a certain commission or share out of the proceeds for making the sale, the authority may be revoked at the will of the principal, even though in terms it was declared to be exclusive or irrevocable. * * * The interest in the commissions to be earned and in the moneys expended in endeavoring to carry out the agency is not sufficient to prevent revocation."

I have quoted from the first edition of Mechem for the reason that the text as quoted is approved and adopted by the Supreme Court of Oklahoma in *McKellop* v. *Dewitz,* 42 Okl. 220, 140 Pac. 1161, 52 L. R. A. (N. S.) 255.

The law governing the relationship of principal and broker as it is stated by Mr. Mechem in the foregoing quotations is followed and approved in the following, among other, cases: *Chambers* v. *Seay,* 73 Ala. 372; *Bailey, McConnell & Howard* v. *Smith,* 103 Ala. 641, 15 South. 900; *Cronin* v. *American*

*Securities Co.,* 163 Ala. 533, 50 South. 915, 136 Am. St. Rep. 88; *Cadigan* v. *Crabtree,* 179 Mass. 474, 61 N. E. 37, 55 L. R. A. 77, 88 Am. St. Rep. 397; *Stensgaard* v. *Smith,* 43 Minn 11, 44 N. W. 669, 19 Am. St. Rep. 205; *Decker* v. *Klingman,* 149 Mich. 96, 112 N. W. 727; *United States Farm Land Co.* v. *Darter* (Cal.) 185 Pac. 696.

In *Chambers* v. *Seay,* supra, the gist of the opinion is reflected in the first headnote, which reads:

"As a general rule, a principal who has empowered an agent to sell, may, at any time before sale, revoke the agent's authority; and when the commission of such agent are payable only in the event of success, a revocation of the agency before a sale destroys the right to them."

The doctrine as quoted from that case is approved and followed in 163 Ala. 533, 50 South. 915, 136 Am. St. Rep. 88, supra.

In *Cadigan* v. *Crabtree,* supra, the Supreme Judicial Court of Massachusetts, in the course of the opinion, says:

"The promise to pay a brokerage commission if a customer is found to purchase at a stated price is not the ordinary employment of labor, but is more in the nature of an offer, namely, an offer to pay a commission if a person is produced who buys at the price named; and, like any other offer, it can be withdrawn at any time, without regard to the fact that the work has been done by a person in reliance on it, provided the work done has not brought the person within the terms of the offer."

In *Stensgaard* v. *Smith,* supra, the written appointment of the broker was not essentially different from the appointment in the case at bar. In the course of the opinion the court said:

"The evidence showed that the plaintiff immediately took steps to effect a sale of the land, posted notices upon it, published advertisements in newspapers, and individually solicited purchasers. About a month subsequent to the execution by the defendant of the above instrument, he himself sold the property. This constitutes the alleged breach of contract for which a recovery of damages is sought.

"The court was justified in its conclusion that no contract was shown to have been entered into, and hence that no cause of action was established. The writing signed by the defendant did not of itself constitute a contract between these parties. In terms indicating that the instrument was intended to be at once oper-

ative, it conferred present authority on the plaintiff to sell the land, and included the promise of the defendant that, if the plaintiff should sell the land, he should receive the stated compensation. This alone was no contract; for there was no mutuality of obligation, nor any other consideration for the agreement of the defendant. The plaintiff did not by this instrument obligate himself to do anything, and therefore the other party was not bound. *Bailey* v. *Austrian,* 19 Minn. 465, 535; *Tarbox* v. *Gotzian,* 20 Minn. 122, 139."

In *Decker* v. *Klingman,* supra, the decision is correctly and sufficiently reflected in the second headnote, which reads:

"Where a real estate broker is employed to sell real estate within a certain time, and the time expires without his having made the sale, he is not entitled to his commission, though the sale is ultimately made by the landowner to a person introduced by the broker, there being no fraud or bad faith on the landowner's part to prevent performance on the part of the broker."

The case of *Porter* v. *Hunter,* 60 Utah, 222, 207 Pac. 153, recently decided by this court is to the same effect.

In a note following the decision in *Paschall* v. *Gilliss,* Ann. Cas. 1913E, at page 788, the writer of the note, under the subject "Negotiations with Broker Terminated," states his conclusions from the decisions thus:

"Although the broker may be the means of first bringing the parties together and of opening negotiations with them, yet if the negotiations are unproductive and the parties in good faith withdraw therefrom and abandon the proposed purchase and sale, a subsequent renewal of negotiations followed by a sale at a less price does not entitle the broker to the commissions as he cannot be said to be the procuring cause of the sale."

Many expressions similar to those above quoted are found in the decisions where the facts and circumstances were not essentially different from those in the case at bar, but sufficient has been said to show the trend of the decisions.

It will thus be seen that where, as here, the appointment is not supported by any consideration, although the authority to sell is in terms exclusive and a fixed period of time is named, yet the owner can terminate the authority at any time before a sale is effected by the broker, and the broker has no claim against the owner for commission or otherwise unless the broker alleges and proves that the authority was termi-

nated in bad faith and for the purpose of selling to one of his customers by the owner himself to avoid the payment of a commission. Nothing of that kind appearing in this case, and the court having found that the alleged agreement was not supported by any consideration and that the authority was terminated by the owner before the sale of the property, the plaintiff has no cause of action. In view, however, that the court further found that the plaintiff was not the procuring cause of the sale in question and that it was effectuated solely through the efforts of the defendant, plaintiff in no event is entitled to recover a commission. To that effect are all the authorities.

Plaintiff's counsel has cited and relies upon the following, among other, cases as supporting his contention that the plaintiff is entitled to recover in this case, namely: *Crane* v. *McCormick,* 92 Cal. 176, 28 Pac. 222; *Tyler* v. *Parr,* 52 Mo. 249; *Hardwick* v. *Marsh,* 96 Ark. 23, 130 S. W. 524; *Bodine* v. *Penn Lumber Co.,* 128 Ark. 347, 194 S. W. 226; *O'Connell* v. *Casey,* 206 Mass. 520, 92 N. E. 804; *Whiting* v. *Cochran,* 7 Colo. App. 533, 44 Pac. 511; *Gresham* v. *Connally,* 114 Ga. 906, 41 S. E. 42; *Baskerville* v. *Gaar Scott & Co.,* 14 S. D. 1, 84 N. W. 204; *Gould* v. *Ricard B. & E. Co.,* 136 Ill. App. 322; *Dobinson* v. *McDonald,* 92 Cal. 33, 27 Pac. 1098, and *Attix, Noyes & Co.* v. *Pelan & Anderson,* 5 Iowa, 336.

We have carefully examined and considered the foregoing as well as other cases cited by counsel. The case of *Crane* v. *McCormick,* supra, went off upon a special provision in the contract between the owner and broker, and the same is true of *Dobinson* v. *McDonald,* the other California case. The decisions in the other cases cited have no bearing upon the case at bar. In all of the other cases cited the general principle of law respecting the broker's right to recover in case he has complied with the terms of his contract are correctly stated, but in none of those cases are the principles of law which control the case at bar discussed, much less decided. The decisions referred to, therefore, have no influence upon the decision in this case.

While a number of other cases are cited by counsel, they all

Certiorari

relate to matters not pertinent to this case, and hence we refrain from making further reference to them.

The judgment should therefore be affirmed. Such is the order. Defendant to recover costs on appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.