HUTCHINSON v. DOBSON-BAINBRIDGE REALTY
CO., Inc.—217 S. W. (2d) 6.

Middle Section.   Aug. 31, 1946.*

*Reported upon recommendation of Supreme Court, 217 S. W.
(2d) 11.

See Lazarov v. Nunnally, 217 S. W. (2d) 11.

Charles C. Trabue, Jr., of Nashville, for plaintiff.

John H. Lechleiter and W. W. Lackey, both of Nashville, for defendant.

FELTS, J.   This is a suit by a real estate broker to recover a commission claimed to be due by the terms of a written contract with defendant.   In the General Sessions Court plaintiff obtained a judgment.   Likewise, in the Circuit Court there was a verdict and judgment for plaintiff for the amount of its claim, $247.50.   Defendant appealed in error to this Court.

In April 1944, plaintiff's employee, E. S. Morgan, sold defendant and wife a house located on Belle Forrest Avenue. in Nashville.   During that negotiation defendant said he wished to sell their house located on Seventeenth Avenue, then occupied by their tenant.   He described this property and stated his terms of sale, $4,950, $1,000 cash and the rest in monthly notes.   Morgan wrote these terms and the description of the property on the back of a card and defendant signed the front side, which was a printed form filled out as follows:

"Dobson-Bainbrige Realty Co., Inc., Agents

"You are hereby appointed exclusive agents to make sale or rent the real property described on the opposite side of this card for 90 days.

"You are authorized to accept deposit on purchase price and execute binding contract of sale or rent on owner's account.

"In case of sale or rental by owner, agent, or any other party before expiration of this agreement you are to receive full cash commission on whole purchase or rental price for said property.

"It is further agreed that if the property is sold, owner will furnish acceptable title in Abstract or guaranty title to be optional with purchaser and make warranty deed to same.

"Usual rate of commission to be applied.

"This 18th day of April, 1944

"/s/   E. W. Hutchinson"

There were some conflicts in the evidence as to whether these blanks had been filled in, and as to some other matters in connection with the signing of this card. But since the jury resolved these conflicts in favor of plaintiff, we must accept its version and take this writing as expressing the agreement of the parties.

Plaintiff immediately entered upon performance of the agreement and spent time and money in its efforts to procure a purchaser. It listed the property for sale, advertised it in the newspapers over a period of four or five weeks—"at least four runs of three days each," and carried prospective purchasers to see the property. But it found its efforts to sell were handicapped. The tenant and his wife worked and were not at home till 6:00 P.M., the property could be shown only after that hour in the evening, and they were "knocking it" and "had killed" one or two "pretty good prospects" by telling them "the basement was wet and such things as that."

Morgan told defendant of these difficulties, and defendant said the tenant would move within two or three weeks. They discussed the advantages of having the property vacant and of being able to give immediate possession to a prospective purchaser. Morgan suggested some things to make the property more attractive and salable, such as redecorating the rooms and other minor repairs. So they concluded it would be better to wait till the tenant got out and defendant could "fix up the place." The tenant vacated and defendant finished this work about July 2.

On the next day Morgan again looked at the property, and told the defendant he thought he could now sell it for

the price demanded. Defendant, however, said they had become dissatisfied with their Belle Forrest property and were thinking of selling it, and he asked Morgan "to hold up for a few days because they were thinking possibly of having to go back into the property," and said he would let Morgan know "when he made up his mind what to do with the property."

Plaintiff waited as requested, but heard no further from defendant, and later learned from another broker that defendant and wife had sold the property through that broker. They sold for $4,950, $600 cash and balance in monthly notes, paying that broker the usual commission of 5 per cent of the total price. This sale was made July 13, 1944, and therefore within the 90 days while plaintiff was exclusive agent and entitled to the commission in case of a sale "by owner, agent, or other party," according to the terms of the writing above quoted.

Defendant, however, contends that this writing was not a binding contract because it lacked mutuality and was without any consideration. Plaintiff, on the contrary, submits that it was supported by sufficient consideration and was a binding contract; that by its terms defendant was bound to pay plaintiff the commission in case of a sale within the 90 days, regardless of who made such sale; and that this case is controlled by Hagan v. Nashville Trust Co., 124 Tenn. 93, 136 S. W. 993.

In that case persons, developing and selling land for a subdivision of Nashville, employed Hagan for a term of five years to superintend construction of the improvements, to advertise the property at their expense, and to solicit purchasers and make sales of the property. For these services, which did not take all his time, they agreed to pay him a certain commission "on all sales of said property." After some two years they became dissatis-

fied with the slowness of his sales and discharged him. He stood ready and willing to perform his part of the contract. They employed other brokers who made more sales than he could have made himself. It was held he was entitled to the commission on all the sales, including those made by the other brokers.

The writing in this case is like the contract in that case in one particular. In both the promise was to pay the broker the commission on the sale, no matter who made it, the promise here being: "In case of sale . . . by owner, agent, or any other party before expiration of this agreement you are to receive full cash commission on whole purchase . . . price for said property." That is, if there was a sale within the 90 days, regardless of who made it, defendant was to pay plaintiff the commission.

But this writing differs from the contract in that case in another particular. That was not the usual brokerage agreement. Hagan promised to perform the services and for his promise his employers promised to pay him the commission. That is, it was a bilateral contract, the promise on one side being the consideration for the promise on the other, and both parties being bound from the moment of the exchange of their promises.

In this case, however, there was no exchange of promises, no mutuality, no consideration when defendant signed the writing. By it he appointed plaintiff exclusive agent for 90 days and promised to pay plaintiff the commission in case of a sale within that time. But plaintiff made no promise, did not agree to try to sell, but was free to do as it chose. The writing itself was not binding as a contract. It was only an offer to make a unilateral contract—an offer of a promise not for a counter promise but for an act to be performed, a sale.

■■ The appointment of plaintiff as exclusive agent, even though for a definite time, was revocable at will. The principal has the *power* to revoke such an agency at any time. Whether he has the *right* to do so depends on whether he has bound himself by contract not to do so for a stated time. McFadden v. Crisler, 141 Tenn. 531, 213 S. W. 912; Flinders v. Hunter, 60 Utah 314, 208 P. 526, 28 A. L. R. 886.

Did this offer ripen into a contract or binding obligation? The consideration for the offer was the performance of an act, a sale. Plaintiff manifested its assent to the offer and began performance of the consideration and continued performance for four or five weeks, spending time and money in its efforts to complete performance. Was this part performance an acceptance of the offer and a sufficient consideration to make the offer irrevocable, or to turn it into a completed contract?

The question whether part performance of the consideration may make such an offer irrevocable has sharply divided judicial opinion. On one side, some authorities hold that no amount of part performance can suffice to make such an offer irrevocable, and that the offeror may revoke his offer at any moment before full performance, whatever the hardship that may result to the offeree. 2 Mechem on Agency, (2d) Ed., secs. 2449-2452; Wormser, The True Conception of Unilateral Contracts (1916), 26 Yale L. J. 136-146; 1 Williston on Contracts, (1st) Ed. 1920, secs. 60-60a. This conclusion rests on the theory of bilateral contracts. In his note to Wald's Pollock on Contracts, Ed. 1906, p. 34, Note 39, Professor Williston defended this view thus:

"One of the most troublesome questions in regard to revocation relates to the right of an offerer to revoke an offer to make a unilateral contract after the consideration has been partly performed, but before it has been com-

pletely performed. On principle it is hard to see why the offerer may not thus revoke his offer. He cannot be said to have already contracted, because by the terms of his offer he was only to be bound if something was done, and it has not yet been done, though it has been begun. Moreover, it may never be done, for the promisee has made no promise to complete the act and may cease performance at his pleasure. To deny the offerer the right to revoke is, therefore, in effect to hold the promise of one contracting party binding though the other party is neither bound to perform nor has actually performed the requested consideration. The practical hardship of allowing revocation under such circumstances is all that can make the decision of the question doubtful.'' (Quoted in 2 Mechem on Agency (2d) Ed., p. 2050, Note 32.)

Despite such hardship, many courts, in such a case as the one before us, hold that the principal has the right to revoke his offer and the broker's agency at any time before the broker has actually procured a purchaser. Stensgaard v. Smith, 1890, 43 Minn. 11, 44 N. W. 669, 19 Am. St. Rep. 205; Auerbach v. Internationale W. Lampen A. Gesellschaft, C. C. 1910, 177 F. 458; Elliott v. Kazajian, 1926, 255 Mass. 459, 152 N. E. 351; Ettinger v. Loux, 1921, 96 N. J. L. 522, 115 A. 384, 20 A. L. R. 1265; Kamenjarin v. Williams, 1927, 327 Ill. 261, 158 N. E. 568; Flinders v. Hunter, 1922, 60 Utah 314, 208 P. 526, 28 A. L. R. 886; Petterson v. Pattberg, 1928, 248 N. Y. 86, 161 N. E. 428; Annotations, 24 A. L. R. 1560-1564, 28 A. L. R. 894.

A greater number of courts, however, hold that part performance of the consideration may make such an offer irrevocable, and that where the offeree or broker manifests his assent to the offer by entering upon performance and spending time and money in his efforts to perform,

then the offer becomes irrevocable during the time stated and binding upon the principal according to its terms. Braniff v. Baier, 1917, 101 Kan. 117, 165 P. 816, L. R. A. 1917E, 1036; Isern v. Gordon, 1929, 127 Kan. 296, 273 P. 435, 64 A. L. R. 391; Lapham v. Flint, 1902, 86 Minn. 376, 90 N. W. 780; S. Blumenthal & Co. v. Bridges, 1909, 91 Ark. 212, 120 S. W. 974, 24 L. R. A. N. S., 279; Confer Brothers, Inc. v. Colbrath, 1921, 149 Minn. 259, 183 N. W. 524; Harris v. McPherson, 1922, 97 Conn. 164, 115 A. 723, 24 A. L. R. 1530; Attix, Noyes & Co. v. Phelan, 1857, 5 Iowa 336; Metcalf v. Kent, 1898, 104 Iowa 487, 73 N. W. 1037; Axe v. Tobert, 1914, 179 Mich. 556, 146 N. W. 413; Cloe v. Rogers, 1912, 31 Okl. 255, 121 P. 201, 38 L. R. A., N. S. 366; Houston v. Williams, 1921, 53 Cal. App. 267, 277, 200 P. 55; Ruess v. Baron, 1932, Cal. App. 10 P. (2d) 518; reversed on another ground, 217 Cal. App. 83, 17 P. (2d) 119; Jones v. Hollander, 1925, N, J. Sup., 130 A. 451; Annotations, 19 L. R. A., N. S., 599, L. R. A. 1917E, 1040, 64 A. L. R. 404, 416-420.

■■ We think this is the better rule. The theoretical difficulties, formidable as they seem, are outweighed by considerations of practical justice. This rule avoids hardship to the offeree, and yet does not hold the offeror beyond the terms of his promise. It is true by such terms he was to be bound only if the requested act was done; but this implies that he will let it be done, that he will keep his offer open till the offeree who has begun can finish doing it. At least this is so where the doing of it will necessarily require time and expense. In such a case it is but just to hold that the offeree's part performance furnishes the ''acceptance'' and the ''consideration'' for a binding subsidiary promise not to revoke the offer, or turns the offer into a presently binding contract conditional upon the offeree's full performance. This theory

of conditional contract seems to have the support of Williston (1 Williston on Contracts (Rev. Ed. 1936), sec. 60A) and is adopted by the American Law Institute:

"If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time." Restatement, Contracts, sec. 45.

See also Unilateral Contract Law—An Analysis in Terms of Conditions (1933), 33 Columbia Law Review, 463-480, and the numerous cases there discussed.

■ So our conclusion is that plaintiff's part performance of the consideration made this writing a contract binding defendant according to its terms. This being so, he could not revoke it. In fact, he did not try; he merely asked plaintiff's agent to hold up a few days, and said he would let the agent know when he made up his mind what to do with the property. This hardly amounted to a repudiation or breach of the contract. But if it did, plaintiff did not acquiesce in it or abandon the contract. It stood ready and willing to perform, and the contract continued in force during the 90 days stipulated. Upon a sale within that period defendant became bound to pay plaintiff the commission, as provided by the contract.

Defendant insists that plaintiff cannot recover because it did not procure a purchaser within the 90 days. This overlooks the provision of the contract that defendant was to pay plaintiff the commission in case of a sale within 90 days, regardless of who made such sale. This phase of the case is ruled by Hagan v. Nashville Trust Co.,

supra. This is in accord with other cases which hold that where the contract provides the broker shall receive a commission "no matter by whom a sale is effected," or if made by the "broker, owner, or any other person," the broker is entitled to the commission on a sale made by the owner or by another agent. Annotation, 64 A. L. R. 416-420.

Defendant assigns as error the judge's refusal to charge the jury that plaintiff could not recover if Morgan knew, when defendant listed the property, that it was owned jointly by him and his wife and that he did not purport to represent her. And in this connection, he complains that the judge charged the jury that by the writing, if they found it to be the contract, defendant bound himself to sell and deliver a good title, which meant getting his wife's signature.

Neither of these matters was prejudicial error. It being undisputed that the sale had been made by defendant and wife, these matters were immaterial and mere abstractions, which cannot be ground for reversible error. Code section 10654; Thomason v. Trentham, 178 Tenn. 37, 154 S. W. 2d 792, 138 A. L. R. 461; Stepp v. Black, 14 Tenn. App. 153, 163.

This disposes of all the questions made by defendant's assignments of error. All of them are overruled, and the judgment of the Circuit Court is affirmed. Judgment will be entered here for plaintiff against defendant for the amount of the judgment below, with interest, and all the costs.

HOWELL and HICKERSON, JJ., concur.