**Robert R. SPATZ, Appellant (Defendant below),**

v.

**MILE–HI REALTY, Appellee (Plaintiff below).**

**No. 4910.**

Supreme Court of Wyoming.

Jan. 30, 1979.

Rehearing Denied Feb. 23, 1979.

Joseph D. Selby, Cheyenne, for appellant.

William A. Riner, Cheyenne, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS, and ROSE, JJ., and GUTHRIE, J., Retired *.

THOMAS, Justice.

Given a situation in which property is listed with a broker for sale by a written instrument which does not recite consideration from the broker to the owner, does the broker become entitled to a commission upon a sale by a competing broker when the evidence discloses no actual consideration furnished by the listing broker? We hold that the listing broker is entitled to no recovery under such circumstances, and we shall reverse the judgment of the trial court pursuant to which the listing broker recovered a commission.

Beginning in about April of 1975 Robert R. Spatz considered selling his restaurant business known as the Spatz Driftwood

Cafe. He had some inconclusive conversations with relatives of one John Dorr, and he also had some conversations with a realtor who indicated an interest in becoming Spatz's agent to sell the business. This realtor mentioned as a potential buyer one Don Wiggins, but initially no arrangement was entered into with that realtor. On June 20, 1975, Spatz gave a listing of the restaurant business to a second realtor which exempted any sale to Wiggins or Dorr. That realtor was not successful in effecting a sale, and there followed a listing on November 5, 1975, with the first realtor for a sale to be made only to Wiggins. Then on February 4, 1976, Spatz gave a listing to Mile-Hi Realty which also provided an exclusion of any sale to Dorr or Wiggins.

The language of that listing which is material for our purposes is as follows:

"We hereby grant you the exclusive right to sell for a period of 180 days from date hereof unless sooner sold, to sell said property for the sum of $69,500 cash, or at any other price, terms or exchange to which we may consent. This listing irrevocable during the said 180 days.

"If you are successful in finding a purchaser for said property, or if the same is sold within a period of 180 days from the expiration of this listing to anyone to whom you have shown the property and of whom we have had notice, we agree to pay you a commission according to the schedule printed below. Exchange property shall be considered same as a sale.

"In event of such sale we will furnish abstract of title extended to date showing merchantable title in us, or a Title Insurance Policy in the full amount of the sale price, and to convey said property by Warranty Deed. Owner(s) further agree to prorate the payment of general taxes for the current year as of the date of closing of the sale and exchange of final

* At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Article 5, Wyoming Constitution, and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

papers, and that interest in encumbrances, rents and insurance premiums be likewise prorated.

"Undersigned owners hereby give and grant to the realtor named herein the exclusive right to sell above described property in accordance with listing terms set forth above, which we have read and with which we are familiar. Seller(s) agree to pay a real estate brokerage fee of 10% ten_____ of the total sale price at the time of closing this transaction. "Owner  /s/  Robert Spatz "

On March 17, 1976, Spatz effected a sale of the restaurant business to Wiggins and a third party according to the sales agreement. This sale was accomplished through the efforts of the realtor who had the listing that applied only to the sale to Wiggins, and Spatz paid a commission on the sale. On March 18, 1976, Spatz then gave notice of the sale to Mile-Hi Realty and requested Mile-Hi to cease efforts on his behalf. Subsequently Mile-Hi began to suspect that the sale which was made was not really to Wiggins and the third party but was to the third party only. While that suspicion led to this action, the circumstances are not material for our purposes. Suffice it to say that on the record the trial court correctly determined that there was not a bona fide sale to Wiggins although Spatz did not become aware of the actual interests of Wiggins and the third party until sometime later. This action was brought by Mile-Hi Realty upon the listing agreement quoted above, and recovery was sought on alternative theories. Under one theory Mile-Hi requested damages for breach of the contract, but no damages were proved. On the other theory a commission on the sale was demanded, and the district court entered judgment awarding to Mile-Hi Realty a commission of ten percent upon the actual sales price of $55,000, or $5,500.

Spatz appeals from this judgment, asserting five issues.[1] We will dispose of the case under the third issue asserted pursuant to which Spatz argues that Mile-Hi failed to prove a contract justifying recovery.

This case accurately is disposed of under the concepts set forth in 2 Restatement of the Law of Agency Second, § 449, p. 361 (A.L.I.1958), which reads as follows:

"§ 449. Compensation When Principal Competes

"The principal does not, by contracting to pay compensation contingent upon the agent's success in accomplishing a definite result, thereby promise that he will not compete either personally or through another agent.

"a. *Unilateral contract of employment.* Although the principal agrees that the agent is to have an exclusive agency or an exclusive power of sale, the principal is not subject to liability to the agent for competing with the agent in violation of his promise unless the principal contracts to employ the agent and the contract is for some period of time either definitely specified or terminating at the end of a reasonable time; if there is no consideration for the principal's promise, or if it is agreed that the employment is terminable at the will of the principal, the principal must not unfairly terminate the

1. I. Do the general words "exclusive right to sell" in a broker's listing control over the specific terms of the operative clauses of the listing which state the conditions under which a commission will be paid?

II. Do written exclusions on a printed broker's listing cover all transactions generally referred to by the words of the exclusion?

III. Did the plaintiff-appellee satisfy its burden of proving a binding contract by introducing a terminated unilateral offer into evidence, without showing acceptance, consideration or mutuality, and the evidence otherwise demonstrated no such acceptance, consideration or mutuality?

IV. Did the plaintiff-appellee satisfy its burden of proving a chain of ownership by introducing records, having no independent basis for validity or accuracy, from a time period different from the time period in question?

V. Did the plaintiff-appellee demonstrate that it is entitled to the full amount of its commission under a listing when the evidence showed that it had produced no purchaser or prospective purchaser for the property in question and that no other efforts were substantiated by the plaintiff?

agent's authority in order to take advantage of his efforts.

"In the ordinary listing of property with a real estate broker, the broker's promises to use his best efforts or other similarly indefinite promises are not, without other facts, sufficient to indicate that consideration has been given.

"Illustration:

"1. P lists Blackacre with A for sale, it being stated that A is to have 'the exclusive sale for three months.' A pays nothing for this and makes no agreement to do more than to list Blackacre among the properties which he has for sale and to use the facilities of his office in effecting a sale. A week later the land is sold to T, who had been introduced to P by another broker. A is entitled to no commission."

The position set forth in this section is an accurate summarization of existing case law.[2]

The listing agreement upon which Mile-Hi premised its claim is silent as to any consideration to be furnished by Mile-Hi. It therefore must be regarded as an offer by Spatz subject to acceptance by performance on the part of Mile-Hi Realty. While some of the cases cited in footnote 2 above demonstrate that an offer such as this may be accepted by relatively minor acts of performance on the part of the broker thus creating a bilateral contract for breach of which damages may be recovered, our search of this record discloses no evidence of partial performance on the part of Mile-Hi Realty. The only mention in the record of possible performance by Mile-Hi Realty is found in the testimony of one of its officers that he was sure the property was advertised for sale because that was the usual business practice of Mile-Hi Realty. He was not able to testify, however, that he knew of any advertisement of this property by Mile-Hi Realty.

In the absence of evidence demonstrating partial performance, we hold that Spatz's offer was subject to revocation until it was accepted, even though it did include references to an exclusive right to sell the property. It never was accepted by Mile-Hi Realty by even minimal acts amounting to partial performance. Under these facts Mile-Hi had no right to compensation or damages upon the sale by the competing broker.

The earlier case of *Leet v. Joder*, 75 Wyo. 225, 295 P.2d 733 (1956), was based upon a different set of facts which must be distinguished from those of the instant case. The primary distinction is in the assumption in that case of the existence of a bilateral contract which the court recognized as having been found by the jury based upon evidence which would justify such a finding.

The judgment of the district court is reversed and the case is remanded for the entry of judgment for the defendant.

**2.** E. g., *Garrett v. Richardson*, 149 Colo. 449, 369 P.2d 566 (1962); *Garfunkel v. Byck*, 28 Ga.App. 651, 113 S.E. 95 (1922); *Braniff v. Baier*, 101 Kan. 117, 165 P. 816 (1917); *Ladd v. Teichman*, 359 Mich. 587, 103 N.W.2d 338 (1960); *Stensgaard v. Smith*, 43 Minn. 11, 44 N.W. 669 (1890); *Kolb v. Bennett Land Co.*, 74 Miss. 567, 21 So. 233 (1897); *Marchiondo v. Scheck*, 78 N.M. 440, 432 P.2d 405 (1967);

*Kruger v. Soreide*, N.D., 246 N.W.2d 764 (1976); *Bell v. Dimmerling*, 149 Ohio St. 165, 78 N.E.2d 49 (1948); *Hutchinson v. Dobson-Bainbridge Realty Co., Inc.*, 31 Tenn.App. 490, 217 S.W.2d 6 (1931); *Sunshine v. Manos*, Tex.Civ. App., 496 S.W.2d 195, 67 A.L.R.3d 1060 (1973); *Patton v. Wilson*, Tex.Civ.App., 220 S.W.2d 184 (1949); *Flinders v. Hunter*, 60 Utah 314, 208 P. 526, 28 A.L.R. 886 (1922).