MR. CHIEF JUSTICE HASWELL
delivered the opinion of the Court.
This is an action by a real estate broker to collect a commisison under a written contract granting him the exclusive right to sell the property. During the term of the listing, the property owner canceled the listing and sold the property herself. From a judgment of the District Court of Yellowstone County denying recovery of the commission, the broker appeals.
Plaintiff and appellant is Rad Lee Payne, a licensed real estate broker in Billings, Montana. Defendant and respondent is Billie Buechler, the owner of the Red Rooster Bar in Shepherd, Montana. On July 5, 1977 the owner and broker entered into a written agreement whereby the broker was employed to sell the owner’s bar, liquor license, furniture and fixtures, a three-bedroom residence and four lots for $139,000 on a 10-year installment basis at 8V2% interest. The written agreement provided, among other things:
“THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale by me or any other person, or of exchange or transfer of said business, per *313 sonal property, lease(s), if any, or any part thereof, during the term of your exclusive employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you.”
The agreement provided that the commission was 10% of the selling price. The expiration date of the agreement and listing was January 1, 1978. The agreement provided for reasonable attorney fees in case of suit on the contract.
The broker proceeded to advertise the property in the Billings Gazette, prepared and mailed brochures including the property which went to approximately 3,000 potential out-of-state buyers, and showed the property to a number of people. He sent further information to those making inquiries and responded to telephone inquiries. He expended $1,120 in attempting to sell the property.
Thereafter on September 15, 1977, the owner sent a letter to the broker as follows:
“Dear Rad:
“Having decided to keep the bar, I wish to take it off the market and cancel my listing.
“If in the future I want to list it I will give you first chance.
“Yours truly,
“Billie Buechler
“Red Rooster Bar
“Shepherd, Mont. 59079”
Twelve days later on September 27, the owner entered into an agreement to sell the bar to a third party for $120,000.
The broker filed his complaint to collect his 10% commission, interest from the date of sale, attorney fees and costs. The owner answered denying the contract was exclusive and alleging that the broker’s authority was terminated prior to sale and that the purchaser was not procured through any efforts of the broker.
Pretrial discovery consisted of interrogatories and answers of the *314 broker and owner, depositions of the broker, his father who was associated in business with him, and the owner.
The case came on for trial on March 26, 1980 before the District Court sitting without a jury. Admitted in evidence without objection were the deposition and exhibits thereto of the broker; the deposition of his father; an exhibit concerning the broker’s attorney fees; the letter from the owner to the broker canceling the listing; an exhibit relating to the broker’s costs and expenses; the interrogatories and answers of the broker and the owner; and a real estate listing agreement on the bar between the owner and another broker. The broker also moved for admission in evidence of the deposition of the owner excepting therefrom certain parts which the broker contended were parol evidence and inadmissible; the owner sought admission in evidence of her entire deposition; and the court reserved a ruling on the admissibility of those parts objected to and admitted the rest.
At the trial the broker, the owner and a Mr. Van Lueschene testified in person, albeit briefly.
The District Court entered findings of fact, conclusions of law and judgment in favor of the owner. The substance of the court’s findings was that the written agreement granting the broker the exclusive right to sell the bar was entered into by the broker and owner on July 5, 1977; that the owner did not intend to grant the broker the exclusive right to sell the bar as she had at least two other listings with other real estate agencies on the same property in effect on July 5, 1977; that no consideration flowed from the broker to the owner other than their mutual contemplation that the broker would attempt to attract prospective purchasers for his own benefit; that the owner advised the broker on September 15, 1977, that the agreement was canceled; and that the broker had nothing to do with attracting the subsequent purchasers to contract the owner or to buy the property.
From these findings the court concluded that the written contract of July 5 lacked consideration and mutuality and the owner had the right to revoke it at any time; that the agreement was not *315 an exclusive agreement to sell the owner’s property; and that the owner acted in good faith in terminating the written contract and did not perpetrate a fraud on the broker. Judgment for the owner was entered accordingly.
We frame the issues on appeal in this manner:
(1) Did the written contract between the broker and owner lack consideration and mutuality?
(2) Was there sufficient evidence to support the finding that the written contract was not intended to and did not give the broker the exclusive right to sell the property?
(3) Did the owner have the right to cancel the written contract during its term without liability for the commission?
Lack of consideration was not raised as a defense to the written contract by the owner but becomes an issue on appeal by reason of the District Court’s findings and conclusions. It has been regularly held that a broker’s expenditure of time and money to find a purchaser is sufficient consideration for the promise to pay a commission and upon such expenditure of time and money, the agreement becomes bilateral and binding upon the owner. Kimmel v. Skelly (1900), 130 Cal. 555, 62 P. 1067; Garrett v. Richardson (1962), 149 Colo. 449, 369 P.2d 566. Here the owner employed the broker on a commission basis and the broker’s expenditure of his time and $1,120 of his money to attract a purchaser constituted consideration for the owner’s agreement to pay a commission.
The District Court further found that the agreement lacked mutuality. Mutuality of obligation was created by the efforts of the broker to find a purchaser for the property on the owner’s terms and the broker’s expenditure of time and money in this effort. Harris v. McPherson (1922), 97 Conn. 164, 115 A. 723, 24 A.L.R. 1530.
We are next faced with the issue of whether the evidence is sufficient to support the court’s finding that the owner did not intend to give the broker the exclusive right to sell the property and the written contract was not an exclusive agreement to sell. The written contract plainly states on its face that the broker is granted the ex- *316 elusive right to sell the proeprty to the exclusion of the owner or any other person. The District Court’s findings and conclusions to the contrary are clearly based on the testimony of the owner that she did not intend to give the broker an exclusive listing; that she had previously given listings to other agencies which were still in effect, one of which was produced and admitted in evidence; and that the broker had written “nonexclusive” on her copy of the contract. She also called a Mr. Van Lueschene who testified that “nonexclusive” was written on her copy of the agreement. Her copy of the written agreement was never produced; she testified that she had destroyed it after her home had been vandalized and molasses and ketchup had been poured on it. With the exception of the copy of a prior and existing listing on the property with another real estate agency, all this evidence was objected to under the parol evidence rule and the objection was taken under advisement by the court.
The parol evidence rule generally provides that the terms of a written agreement cannot be altered or contradicted by oral testimony subject to certain well-recognized exceptions. See section 28-2-905, MCA. The written contract supersedes all oral negotiations or stipulations which preceded or accompanied its execution. Section 28-2-904, MCA. In accord, Danielson & Ward v. Danielson & Neu (1977), 172 Mont. 55, 560 P.2d 893; Batey Land & Livestock Co. v. Nixon (1977), 172 Mont. 99, 560 P.2d 1334; Larson v. Burnett (1972), 158 Mont. 421, 492 P.2d 921.
The owner contends that the foregoing parol evidence is admissible pursuant to section 26-1-103, MCA, which provides:
“Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such 'declaration, act, or omission is evidence as part of the transaction.”
Not so. This statute is simply an exception to the hearsay rule, Callahan v. C B & Q Ry. Co. (1913), 47 Mont. 401, 133 P. 687. It has nothing to do with the parol evidence rule which is a rule of substantive law.
*317 The owner also asserts that Rule 106 of the Montana Rules of Evidence and Rule 32(a)(4), M.R.Civ.P., render this parol evidence admissible. These are rules on admissibility of evidence. Parol evidence cannot be introduced because as a matter of substantive law the written agreement constitutes the entire trans^ action between the parties.
The owner also argues that the evidence is admissible under an exception to the parol evidence rule set forth in section 1-4-102, MCA:
“For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret.”
This statute relates to construction and interpretation of written instruments but is irrelevant here. The language of the contract is plain and unambiguous. Under such circumstances, the language alone controls and there is nothing for the Court to interpret or construe. Section 28-3-401, MCA and section 28-3-303, MCA. The quoted statute only applies where an ambiguity exists in the language of the contract.
We have examined the cases cited by the owner which she claims support the admissibility of parol evidence that she did not intend to give the broker an exclusive listing and did not give him such a listing. None support the admissibility of such parol evidence in this case. Brown v. Homestake Exploration Co. (1934), 98 Mont. 305, 39 P.2d 168, involved a lengthy written contract ambiguous on its face and parol evidence was admitted as an aid to interpretations, a clear exception to the parol evidence rule. In Platt v. Clark(1963), 141 Mont. 376, 378 P.2d 235, parol evidence was admitted, not to vary or alter the terms of a written contract, but to show that a condition precedent to an otherwise valid and binding lease had not occurred and therefore the written lease never became effective. See generally Anno.: Applicability of Parol *318 Evidence Rule to Written Listing Agreement of Real Estate Broker, 38 A.L.R.2d 542.
Here the parol evidence directly contradicts the plain and unambiguous language of the written instrument; it does not fall within any recognized exception permitting its admission in evidence, and is clearly inadmissible. Although the District Court did not rule on the broker’s objection to its admission in evidence, its findings and conclusions clearly reflect that the court based them on this inadmissible evidence. This was error.
The last issue concerns whether the owner had the right to cancel the written listing agreement during its term and thereby deny the broker a commission. The written agreement plainly gave the broker an exclusive right to sell the property during the term of the agreement; provided that if the owner or any other person sold or transferred the property, the owner would pay the broker the commission; and finally provided that if the owner withdrew the broker’s exclusive authority to sell the property, the owner would pay the broker the commission. The District Court held that the owner had the right to revoke the agreement at any time and denied the broker any commission.
As we have previously indicated, once the broker began performance under the written agreement by expenditure of his time, efforts and money to attract a purchaser on the owner’s terms, the written agreement became bilateral and binding on both parties. It could not be unilaterally terminated by the owner without payment of the broker’s commission. Piatt & Heath Co. v. Wilmer (1930), 87 Mont. 382, 288 P. 1021; McDonald & Co. v. Fishtail Creek Ranch (1977), 175 Mont. 53, 572 P.2d 195; Anno.: 88 A.L.R.2d 938, 966.
Flinders v. Hunter (1922), 60 Utah 314, 208 P. 526 is cited by the owner for the proposition that an agency relationship is revocable by the owner unless the broker has an interest in the property. The broker’s contention in this case is not that the owner lacks the right to terminate the broker’s authority. The broker’s contention is that if the owner does revoke, he is nonetheless liable *319 for the broker’s commission by the clear language of the written agreement. Flinders does not support the owner’s contention that she is not liable for the commission.
In summary, the District Court’s findings and conclusions that the written agreement lacked consideration and mutuality and that the agreement was not an exclusive agreement to sell the property were error as a matter of law.
The judgment of the District Court denying the broker his commission is reversed. The cause is remanded to the District Court for entry of judgment for plaintiff broker in the amount of 10% of the price at which the property was sold by defendant owner to Eugene F. Schaul and Karen M. Schaul, his wife, under the agreement dated September 27, 1977, plus reasonable attorney fees and costs.
MR. JUSTICES DALY, HARRISON and SHEEHY concur.
MR. JUSTICE SHEA dissents.