No. 80-227

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

RAD LEE PAYNE,

Plaintiff and Appellant,

vs.

BILLIE BUECHLER,

Defendant and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Gerald J. Neely, Billings, Montana

For Respondent:

Berger, Anderson, Sinclair & Murphy, Billings, Montana

Submitted on briefs: December 17, 1980

Decided: MAY 26 1981

Filed: MAY 26 1981

*Thomas J. Kearney*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an action by a real estate broker to collect a commission under a written contract granting him the exclusive right to sell the property. During the term of the listing, the property owner canceled the listing and sold the property herself. From a judgment of the District Court of Yellowstone County denying recovery of the commission, the broker appeals.

Plaintiff and appellant is Rad Lee Payne, a licensed real estate broker in Billings, Montana. Defendant and respondent is Billie Buechler, the owner of the Red Rooster Bar in Shepherd, Montana. On July 5, 1977 the owner and broker entered into a written agreement whereby the broker was employed to sell the owner's bar, liquor license, furniture and fixtures, a three-bedroom residence and four lots for $139,000 on a 10-year installment basis at 8½% interest. The written agreement provided, among other things:

> "THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale by me or any other person, or of exchange or transfer of said business, personal property, lease(s), if any, or any part thereof, during the term of your exclusive employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you."

The agreement provided that the commission was 10% of the selling price. The expiration date of the agreement and listing was January 1, 1978. The agreement provided for reasonable attorney fees in case of suit on the contract.

The broker proceeded to advertise the property in the Billings Gazette, prepared and mailed brochures including the property which went to approximately 3,000 potential out-of-state buyers, and showed the property to a number of people. He sent further information to those making inquiries and responded to telephone inquiries. He expended $1,120 in attempting to sell

- 2 -

the property.

Thereafter on September 15, 1977, the owner sent a letter to the broker as follows:

"Dear Rad:

"Having decided to keep the bar, I wish to take it off the market and cancel my listing.

"If in the future I want to list it I will give you first chance.

"Yours truly,

"Billie Buechler
"Red Rooster Bar
"Shepherd, Mont. 59079"

Twelve days later on September 27, the owner entered into an agreement to sell the bar to a third party for $120,000.

The broker filed his complaint to collect his 10% commission, interest from the date of sale, attorney fees and costs. The owner answered denying the contract was exclusive and alleging that the broker's authority was terminated prior to sale and that the purchaser was not procured through any efforts of the broker.

Pretrial discovery consisted of interrogatories and answers of the broker and owner, depositions of the broker, his father who was associated in business with him, and the owner.

The case came on for trial on March 26, 1980 before the District Court sitting without a jury. Admitted in evidence without objection were the deposition and exhibits thereto of the broker; the deposition of his father; an exhibit concerning the broker's attorney fees; the letter from the owner to the broker canceling the listing; an exhibit relating to the broker's costs and expenses; the interrogatories and answers of the broker and the owner; and a real estate listing agreement on the bar between the owner and another broker. The broker also moved for admission in evidence of the deposition of the owner excepting therefrom certain parts which the broker contended were parol evidence and inadmissible; the owner sought admission in evidence of her

entire deposition; and the court reserved a ruling on the admissibility of those parts objected to and admitted the rest.

At the trial the broker, the owner and a Mr. VanLueschene testified in person, albeit briefly.

The District Court entered findings of fact, conclusions of law and judgment in favor of the owner. The substance of the court's findings was that the written agreement granting the broker the exclusive right to sell the bar was entered into by the broker and owner on July 5, 1977; that the owner did not intend to grant the broker the exclusive right to sell the bar as she had at least two other listings with other real estate agencies on the same property in effect on July 5, 1977; that no consideration flowed from the broker to the owner other than their mutual contemplation that the broker would attempt to attract prospective purchasers for his own benefit; that the owner advised the broker on September 15, 1977, that the agreement was canceled; and that the broker had nothing to do with attracting the subsequent purchasers to contact the owner or to buy the property.

From these findings the court concluded that the written contract of July 5 lacked consideration and mutuality and the owner had the right to revoke it at any time; that the agreement was not an exclusive agreement to sell the owner's property; and that the owner acted in good faith in terminating the written contract and did not perpetrate a fraud on the broker. Judgment for the owner was entered accordingly.

We frame the issues on appeal in this manner:

(1) Did the written contract between the broker and owner lack consideration and mutuality?

(2) Was there sufficient evidence to support the finding that the written contract was not intended to and did not give the broker the exclusive right to sell the property?

(3) Did the owner have the right to cancel the written

contract during its term without liability for the commission?

Lack of consideration was not raised as a defense to the written contract by the owner but becomes an issue on appeal by reason of the District Court's findings and conclusions. It has been regularly held that a broker's expenditure of time and money to find a purchaser is sufficient consideration for the promise to pay a commission and upon such expenditure of time and money, the agreement becomes bilateral and binding upon the owner. Kimmel v. Skelly (1900), 130 Cal. 555, 62 P. 1067; Garrett v. Richardson (1962), 149 Colo. 449, 369 P.2d 566. Here the owner employed the broker on a commission basis and the broker's expenditure of his time and $1,120 of his money to attract a purchaser constituted consideration for the owner's agreement to pay a commission.

The District Court further found that the agreement lacked mutuality. Mutuality of obligation was created by the efforts of the broker to find a purchaser for the property on the owner's terms and the broker's expenditure of time and money in this effort. Harris v. McPherson (1922), 97 Conn. 164, 115 A. 723, 24 ALR 1530.

We are next faced with the issue of whether the evidence is sufficient to support the court's finding that the owner did not intend to give the broker the exclusive right to sell the property and the written contract was not an exclusive agreement to sell. The written contract plainly states on its face that the broker is granted the exclusive right to sell the property to the exclusion of the owner or any other person. The District Court's findings and conclusions to the contrary are clearly based on the testimony of the owner that she did not intend to give the broker an exclusive listing; that she had previously given listings to other agencies which were still in effect, one of which was produced and admitted in evidence; and that the broker had written "nonexclusive" on her copy of the contract.

She also called a Mr. VanLueschene who testified that "nonexclusive" was written on her copy of the agreement. Her copy of the written agreement was never produced; she testified that she had destroyed it after her home had been vandalized and molasses and ketchup had been poured on it. With the exception of the copy of a prior and existing listing of the property with another real estate agency, all this evidence was objected to under the parol evidence rule and the objection was taken under advisement by the court.

The parol evidence rule generally provides that the terms of a written agreement cannot be altered or contradicted by oral testimony subject to certain well-recognized exceptions. See section 28-2-905, MCA. The written contract supersedes all oral negotiations or stipulations which preceded or accompanied its execution. Section 28-2-904, MCA. In accord, Danielson & Ward v. Danielson & Neu (1977), 172 Mont. 55, 560 P.2d 893; Batey Land & Livestock Co. v. Nixon (1977), 172 Mont. 99, 560 P.2d 1334; Larson v. Burnett (1972), 158 Mont. 421, 492 P.2d 921.

The owner contends that the foregoing parol evidence is admissible pursuant to section 26-1-103, MCA, which provides:

> "Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction."

Not so. This statute is simply an exception to the hearsay rule, Callahan v. C B & Q Ry. Co. (1913), 47 Mont. 401, 133 P. 687. It has nothing to do with the parol evidence rule which is a rule of substantive law.

The owner also asserts that Rule 106 of the Montana Rules of Evidence and Rule 32(a)(4), M.R.Civ.P., render this parol evidence admissible. These are rules on admissibility of evidence. Parol evidence cannot be introduced because as a matter of substantive law the written agreement constitutes the entire transaction between the parties.

The owner also argues that the evidence is admissible under an exception to the parol evidence rule set forth in section 1-4-102, MCA:

> "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret."

This statute relates to construction and interpretation of written instruments but is irrelevant here. The language of the contract is plain and unambiguous. Under such circumstances, the language alone controls and there is nothing for the Court to interpret or construe. Section 28-3-401, MCA and section 28-3-303, MCA. The quoted statute only applies where an ambiguity exists in the language of the contract.

We have examined the cases cited by the owner which she claims support the admissibility of parol evidence that she did not intend to give the broker an exclusive listing and did not give him such a listing. None support the admissibility of such parol evidence in this case. Brown v. Homestake Exploration Co. (1934), 98 Mont. 305, 39 P.2d 168, involved a lengthy written contract ambiguous on its face and parol evidence was admitted as an aid to interpretations, a clear exception to the parol evidence rule. In Platt v. Clark (1963), 141 Mont. 376, 378 P.2d 235, parol evidence was admitted, not to vary or alter the terms of a written contract, but to show that a condition precedent to an otherwise valid and binding lease had not occurred and therefore the written lease never became effective. See generally Anno: Applicability of Parol Evidence Rule to Written Listing Agreement of Real Estate Broker, 38 ALR2d 542.

Here the parol evidence directly contradicts the plain and unambiguous language of the written instrument; it does not fall within any recognized exception permitting its admission in evidence, and is clearly inadmissible. Although the District Court did not rule on the broker's objection to its admission in

evidence, its findings and conclusions clearly reflect that the court based them on this inadmissible evidence. This was error.

The last issue concerns whether the owner had the right to cancel the written listing agreement during its term and thereby deny the broker a commission. The written agreement plainly gave the broker an exclusive right to sell the property during the term of the agreement; provided that if the owner or any other person sold or transferred the property, the owner would pay the broker the commission; and finally provided that if the owner withdrew the broker's exclusive authority to sell the property, the owner would pay the broker the commission. The District Court held that the owner had the right to revoke the agreement at any time and denied the broker any commission.

As we have previously indicated, once the broker began performance under the written agreement by expenditure of his time, efforts and money to attract a purchaser on the owner's terms, the written agreement became bilateral and binding on both parties. It could not be unilaterally terminated by the owner without payment of the broker's commission. Piatt & Heath Co. v. Wilmer (1930), 87 Mont. 382, 288 P. 1021; McDonald & Co. v. Fishtail Creek Ranch (1977), 175 Mont. 53, 572 P.2d 195; Anno: 88 ALR2d 938, 966.

Flinders v. Hunter (1922), 60 Utah 314, 208 P. 526, is cited by the owner for the proposition that an agency relationship is revocable by the owner unless the broker has an interest in the property. The broker's contention in this case is not that the owner lacks the right to terminate the broker's authority. The broker's contention is that if the owner does revoke, he is nonetheless liable for the broker's commission by the clear language of the written agreement. Flinders does not support the owner's contention that she is not liable for the commission.

In summary, the District Court's findings and conclusions

- 8 -

that the written agreement lacked consideration and mutuality and that the agreement was not an exclusive agreement to sell the property were error as a matter of law.

The judgment of the District Court denying the broker his commission is reversed. The cause is remanded to the District Court for entry of judgment for plaintiff broker in the amount of 10% of the price at which the property was sold by defendant owner to Eugene F. Schaul and Karen M. Schaul, his wife, under the agreement dated September 27, 1977, plus reasonable attorney fees and costs.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

-9-

No. 80-227

PAYNE V. BUECHLER

DISSENT

Justice Daniel J. Shea

FILED

MAY 27 1981

Thomas J. Kearney
CLERK OF SUPREME COURT
STATE OF MONTANA

Opinion handed down 5/26/81

Dissent handed down 5/27/81

Mr. Justice Daniel J. Shea dissenting:

If compelled to make a choice, I would affirm the judgment. The majority is clearly in error by invoking the parol evidence rule to prevent the defendant from proving that she had an agreement with the plaintiff that the real estate listing contract was nonexclusive. But even though I believe the majority is in error, this case was so poorly tried, and the findings and conclusions are so inadequate that I cannot in good conscience vote to affirm the judgment. It would be an injustice to do so. Justice requires that the judgment be vacated, and that the case be tried again.

REASONS WHY THE JUDGMENT MUST BE VACATED AND THE CASE TRIED AGAIN

This case took no more than an hour to try. Attorneys for both sides stipulated that three depositions (that of the plaintiff, Rad Lee Payne, that of his father, Carl Payne, and that of the defendant, Billie Buechler) be admitted in evidence. The only exception was that plaintiff's attorney reserved an objection to a part of the defendant's deposition testimony on her claim that she had a listing agreement with plaintiff with the word "nonexclusive" written on it in the defendant's handwriting. Plaintiff's attorney claimed that this testimony was barred by the parol evidence rule.

In addition to the depositions, the parties agreed that all pretrial interrogatories and their answers be admitted in evidence.

The record does not disclose the answer, but I surmise that the parties were pressured into speeding up the trial-- but it was hurried up so much that it was hardly a trial at all.

The trial transcript of testimony covers a total of sixteen pages. The plaintiff did not testify to the circumstances surrounding the execution of the listing agreement. He only

-10-

testified to the amount of work he put in trying to sell the defendant's property after he had obtained the listing. Nothing in the record discloses why he did not testify on the circumstances surrounding the execution of the listing agreement on July 5, 1977. In effect, plaintiff's case-in-chief on the main legal question was based entirely on depositions.

Defendant's case was not much longer. Defendant was called to the witness stand and her counsel asked her if she understood that "your deposition has been introduced into evidence in lieu of a great deal of your testimony . . ." and she replied "yes." She then identified another listing agreement that was in existence and still in effect when she signed the listing agreement with plaintiff on July 5, and this listing agreement was introduced into evidence with no objection from the plaintiff. She then testified that she refused to sign an exclusive listing agreement with the plaintiff.

She testified that Mr. Van Lueschene was present when she signed the listing agreement with plaintiff. Next, she testified that she sold the property on her own and that plaintiff did nothing to find the buyer. Her testimony on direct examination covers four pages.

Plaintiff's attorney then cross-examined her by asking her if she had found her copy of the listing agreement that she had with the plaintiff, and she again explained how her copy was destroyed as a result of vandalism. This cross-examination covers one-and-a-half pages of trial transcript.

Next, defendant called Mr. Van Lueschene as a witness, and he testified that he was present when plaintiff and defendant signed the listing agreement, that he had seen the plaintiff filling out the listing agreement and that he had seen

-11-

the
/word "nonexclusive" written on the defendant's copy of the listing agreement. Before Van Lueschene testified to the circumstances surrounding the execution of the listing agreement, plaintiff's attorney asked for a continuing objection on the ground that this testimony should be barred by the parol evidence rule. The entire testimony (direct and cross) covers five pages of the trial transcript.

In rebuttal, plaintiff called the defendant as an adverse witness. She was asked if she agreed with Van Lueschene's testimony to the effect that the word "nonexclusive" was written on the front of her copy of the listing agreement, and she replied yes. He then attempted to impeach her by revealing that at her deposition, she had testified that the word "nonexclusive" was handwritten on the back side of her copy of the listing agreement. Both sides then rested.

Plaintiff then submitted proposed findings and conclusions to the court and the defendant, who did not have any prepared, was given time to get them submitted. Later, the court adopted verbatim the defendant's proposed findings and conclusions, and entered judgment for the defendant. These findings and conclusions are absolutely inadequate, and I could not put the stamp of approval on a judgment based on them.

The findings and conclusions contain no reference to the claimed "nonexclusive" listing agreement. The findings are absolutely silent as to whether plaintiff knew that defendant had one or more listing agreements in effect when the listing agreement was signed on July 5, 1977. In fact, there is no finding which covers the main issue of this appeal--whether parol evidence of the claimed "nonexclusive" listing agreement should be admitted.

The only finding which remotely bears on this issue, finding no. 3 states:

-12-

"That the contract was not intended by the
defendant to be an exclusive right of the
plaintiff to sell her property; that she had
at least two other listing agreements with other
real estate agencies in effect on July 5, 1977,
whereby they also had the right to sell the
property."

This finding is in essence, the entire basis for
the trial court's decision, for the question of consideration
and the question of the letter of termination are not dis-
positive of this case.

The only way that the judgment should be affirmed on
the basis of the findings and conclusions is to invoke the
doctrine of implied findings, and I am not about to do so.
Too often it is used to get trial courts off the hook who
have simply not done their job. If the case was well-tried
and there was a good evidentiary record in existence, I
would remand only for further findings. But here, because
there was hardly a trial at all, I would order a new trial.

I add that neither the parties nor the trial court have
pointed out a glaring discrepancy as to who was present on
July 5, 1977, when the listing agreement was signed. In
their depositions, the plaintiff, Rad Lee Payne, and his
father, Carl Payne, testified that both of them were with
the defendant when they discussed the listing agreement and
when it was signed. Both of them also testified that Mr.
Van Lueschene was not present on July 5. On the other hand,
the defendant and Van Lueschene testified that only the
defendant, the plaintiff, and Van Lueschene were present on
July 5 when the listing agreement was signed. Both of them
unequivocally testified that Carl Payne was not there. Someone
is not telling the truth, and who was present is vital to the
question of whether plaintiff wrote "nonexclusive" on defendant's
copy of the listing agreement.

For these reasons, I would vacate the judgment and remand
for a full trial--before a different judge. I turn now to a

discussion of why the majority is wrong in reversing the case and ordering judgment to be entered for the plaintiff.

Before proceeding to an analysis of the applicable rules, I think it necessary to expand on the facts stated in the majority opinion, and also to put this case in a procedural perspective as to how it was tried. The procedural question will be considered first.

As previously indicated, the depositions of plaintiff, of defendant, and of Carl Payne, were admitted in evidence. Plaintiff did reserve an objection, however, to defendant's claim that she had a "nonexclusive" listing--the objection was apparently aimed at keeping out of evidence her discussions with the plaintiff where she claims to have insisted on a "nonexclusive" listing.

The fact is, however, that the depositions of plaintiff and of Carl Payne, cover their version of discussions they had with plaintiff as to whether the listing was to be exclusive or nonexclusive, and as to whether plaintiff or anyone else had written "nonexclusive" on defendant's copy of the listing agreement. Their deposition testimony also covers their claim that they believed that plaintiff did not have the property listed with anyone else at the time she signed their listing agreement, even though they knew she had previously had listing agreements in effect with other real estate agencies.

For reasons of fairness alone, the trial court should also have been allowed to consider the testimony of the plaintiff and of Van Lueschene on their version of the signing of the listing agreement. See Rule 32(a)(4), M.R.Civ.P. But aside from this, the majority has missed the point in applying the parol evidence rule to bar the evidence. The evidence clearly

-14-

falls within the exceptions to the parol evidence rule (set out in the statute itself, section 28-2-905, MCA), but unfortunately, the majority opinion does not discuss the exceptions other than to state that the evidence "does not fall within any recognized exception permitting its admission in evidence . . ." The exceptions, however, clearly apply to this case.

ADDITIONAL FACTS NOT MENTIONED IN THE MAJORITY OPINION

I proceed next to an expansion of the facts beyond those stated in the majority opinion, because it must be done in order to reach the legal issues not covered in the majority opinion.

In her deposition, the defendant explained what had happened to her copy of the listing agreement:

> "And on my exhibit, or on my contract which was destroyed when my house was broken into, I lost all my bank statements, lost all my records from my bar, I lost all my bank statements from last year, everything that I had, because when they broke into my bar or into my house, they poured ketchup, mustard, molasses, anything they could find in my house, all over everything, I mean there was no way that I could salvage anything . . ."

At trial, plaintiff's attorney did not object to this testimony introduced through defendant's deposition.

He did object, however, to the remainder of the defendant's answer in the deposition, which states:

> "I told him right then, I said I would not list this exclusively; he said: 'Well, we really don't do this this way, but' he said, 'we will make an exception.' So on the top of my listing he wrote 'non-exclusive.' Well, I have nothing to prove that he wrote this, except that people that were sitting there listening to me say this."

The basis of the plaintiff's objection was that the parol evidence rule barred admission of this testimony.

-15-

Further, at trial, plaintiff's counsel, in his first question to the defendant on cross-examination, opened up the question of the defendant's missing copy of the listing agreement. He asked her if she had ever found her copy, and she again repeated what she said in her deposition. She said that vandals had broken into her house and, among other things, had poured ketchup, mustard and molasses over many of her papers, including the listing agreement, and that the papers had been ruined. In explaining how she threw out many of the items she said:

> "I didn't even realize what I was throwing out, because there was so much stuff there that I couldn't salvage. They had poured molasses and ketchup and everything out of my cupboards all over my papers."

By her deposition testimony, and by her trial testimony, admitted without objection, defendant laid a foundation under Rule 1004(1), M.R.Evid., for proof of the contents of a lost or destroyed document--here the listing agreement. The next question, then, is whether defendant and Van Lueschene were entitled to testify that plaintiff had written "nonexclusive" on her copy of the listing agreement. I have no doubt that such testimony is admissible.

Contrary to the implications of the majority opinion, we are not dealing with only the plaintiff's copy of the listing agreement. Rather, we are dealing with the plaintiff's copy and defendant's copy, and the defendant claims that her copy contradicts the contents of the plaintiff's copy. Although the effect of defendant's offered evidence is clearly to alter the terms of the listing agreement copy held by the plaintiff, the evidence was offered to show that another copy of the same listing agreement existed, and that it contradicted the plaintiff's copy. Proof of the contents of a lost or

-16-

destroyed document is permitted under Rule 1004(1), M.R.Evid. The parol evidence rule certainly would not bar evidence that defendant's copy contained the word "nonexclusive" in the plaintiff's handwriting. Once this evidence was admitted, the parol evidence rule would not bar the evidence needed to explain the patent contradiction in the listing agreements. Both versions cannot be right.

The logic of the majority opinion means that the outcome would always have to be controlled by the copy of the contract held by the broker. If a broker actually wrote different terms on the seller's copy of the listing agreement, he would never have to worry about being bound by what he had written on the seller's copy.

If this case were sufficiently tried to bring out the facts and if sufficient findings had been entered, I would affirm the judgment for two reasons. First, the two copies of the listing agreement (one of which the contents had been proved by first laying a foundation of a lost or destroyed document), not only created an ambiguity in need of explanation, they created a patent contradiction for which the explanation was vital. Because the actual copy of defendant's listing agreement was not produced, the question becomes one of credibility: Either the trial court believes plaintiff and his father that neither of them wrote "nonexclusive" on defendant's copy of the listing agreement, or the trial court believes the defendant and Van Lueschene, that plaintiff did write "nonexclusive" on defendant's copy of the listing agreement.

Second, assuming that "nonexclusive" was never written on defendant's copy of the listing agreement, defendant still could claim on the basis of illegality, invalidity, or fraud

-17-

(section 28-2-905, MCA) that the listing was nonexclusive.
If the defendant told plaintiff that she did not want an
exclusive listing agreement, and if she told plaintiff that
she already had a listing agreement in effect, what right
would plaintiff have to claim that he had an exclusive listing
agreement and be entitled to a real estate commission under
the facts here?  Assuming these facts, plaintiff would have
known he had no right to receive an exclusive listing because
defendant had no right to give him one.  In such event, the
exclusive listing would be invalid (an exception to the parol
evidence rule/in section 28-2-905(1)(b), MCA), and any attempt
by the plaintiff to recover on this basis of an exclusive
listing could well be given the name of fraud (another exception
to the parol evidence rule listed in section 28-2-905(2), MCA).
My explanation follows.

THE MAJORITY RATIONALE FOR EXCLUSION OF THE EVIDENCE

Without any analysis, the majority collects the following
evidence under one umbrella and implicitly declares it in-
admissible by application of the parol evidence rule:

> ". . . The District Court's findings and
> conclusions are clearly based on the testimony
> of the owner that she did not intend to give
> the broker an exclusive listing; that she
> had previously given listings to other agencies
> which were still in effect, one of which was
> produced and admitted in evidence; and that the
> broker had written 'nonexclusive' on her copy
> of the contract.  She also called Mr. Van
> Lueschene who testified that 'nonexclusive' was
> written on her copy of the agreement.  Her copy
> of the written agreement was never produced; she
> testified that she had destroyed it after her
> home had been vandalized and molasses and ketchup
> had been poured on it.  With the exception of a
> prior and existing listing of the property with
> another real estate agency, all this evidence
> was objected to under the parol evidence rule
> and the objection was taken under advisement
> by the court."  (Emphasis added.)

Only once does the majority refer to the parol evidence rule
(section 28-2-905, MCA), and never to the exceptions contained

-18-

in the same statute. They state: "The parol evidence rule generally provides that the terms of a written agreement cannot be altered or contradicted by oral testimony subject to certain well-recognized exceptions. See section 28-2-905, MCA." (Emphasis added.) After summarizing the evidence that apparently violates the parol evidence rule (previously discussed), and never setting out the exceptions to the parol evidence rule, the opinion states: "Here the parol evidence directly contradicts the plain and unambiguous language of the written instrument; it does not fall within any recognized exception permitting its admission in evidence, and is clearly inadmissible . . ." (Emphasis added.)

I find such analysis and rationale to be seriously defective.

THE PAROL EVIDENCE RULE AND ITS APPLICATION HERE

All of the evidence (excluded by the majority opinion) is plainly admissible by the very terms of the entire parol evidence statute, section 28-2-905. Section 28-2-905 (cited but neither quoted nor applied by the majority) states:

> "(1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:
>
> "(a) when a mistake or imperfection of the writing is put in issue by the pleadings;
>
> "(b) when the validity of the agreement is the fact in dispute.
>
> "(2) This section does not exclude other evidence of the circumstances under which the agreement is made or to which it relates, as defined in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.
>
> "(3) The term 'agreement'. . . includes deeds . . . as well as contracts between parties." (Emphasis added.)

The validity of the agreement is "the fact in dispute" and therefore falls within the exception listed in section

28-2-905(1)(b), MCA. That is, the plaintiff broker contends he had an exclusive listing and was therefore entitled to a commission. But the defendant owner contends the broker had only a "nonexclusive" listing, and that he wrote "non-exclusive" on her copy of the listing agreement. Assuming the defendant to be correct, the listing agreement being held by the plaintiff broker would be invalid as an "exclusive" listing. Applied here, it would mean that under the facts here, the plaintiff could not collect a commission.

Further, although the pleadings were not so framed, the clear intent of the defendant was to show that the plaintiff broker was holding an illegal exclusive listing agreement, that in fact, when all the facts are considered, including her lost or destroyed copy of the listing agreement, the broker was holding a "nonexclusive" listing agreement. This being so, the evidence would be admissible under section 28-2-905(2). If defendant prevailed (that is, if the trial court believed plaintiff and the witness Van Lueschene), the plaintiff broker would be holding an illegal exclusive listing agreement, and he could not recover a commission based on the facts of this case.

The essence of defendant's case is that she tried to show that the exclusive listing held by the broker did not constitute the entire transaction--that her copy of the listing agreement stating "nonexclusive", flatly contradicted plaintiff's copy of the listing agreement. If plaintiff had actually written "nonexclusive" on the listing agreement, or otherwise agreed to a nonexclusive listing, I have no doubt he would be guilty of fraud against the defendant by then trying to collect a commission based only on his copy of the listing agreement showing that he had an "exclusive" listing. For this reason, all of the testimony would be admissible under the fraud exception set out in section 28-2-905(2).

-20-

Under all of the circumstances here, admitting the evidence would mean that the trial court was faced with a question of fact as to who to believe. If he believed plaintiff and his father, he could still order that the commission be paid. But if he believed the defendant and the witness Van Lueschene, he could rule (as he did here) that the plaintiff held only a "nonexclusive" listing and was therefore not entitled to collect a commission under the facts of the case.

I have set forth the reasons why I cannot affirm the District Court judgment, and I have also set forth the reasons why I cannot abide by the majority opinion. One more factor, however, must be addressed—and that is the evidentiary question posed by the need to introduce evidence of the contents of the destroyed listing agreement.

PROOF OF CONTENTS OF THE DESTROYED COPY OF THE DEFENDANT'S LISTING AGREEMENT

An implied assumption of the majority decision is that even if the defendant produced a copy of her listing agreement with "nonexclusive" written in the plaintiff's handwriting, that defendant would still be bound exclusively by the plaintiff's copy of the listing agreement. Such decision has behind it neither logic nor justice.

The first question on defendant's listing agreement is: could the listing agreement be introduced in evidence if it still existed. I have no doubt that it could, for her copy was every bit as much an original as was the plaintiff's copy. Further, if her copy contained the word "nonexclusive" written on it, in plaintiff's handwriting, it would defeat plaintiff's right to recover the real estate commission. Simple fairness requires that defendant be

-21-

permitted to introduce her copy of the agreement, just as simple fairness requires that plaintiff be permitted to introduce his copy of the listing agreement. The question then becomes one of whether plaintiff, who claims to have thrown away her copy of the listing agreement because it was virtually destroyed by vandals, should be permitted to establish the contents of this document anyway. The law permits her to do so.

The applicable rule of evidence to prove the contents of an original or copy where it has been lost or destroyed, Rule 1004(1), M.R.Evid., provides:

> "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: . . . (1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; . . ." (Emphasis added.)

The defendant's copy of the listing agreement was an original within the meaning of the rules of evidence. Rule 1001(3), M.R.Evid., defines original as follows:

> "(3) An original of a writing or a recording is the writing or recording itself, of any counterpart intended to have the same effect by a person executing or issuing it . . ."

The evidence establishes that the listing agreements were form listings, with a carbon in between the top and the second copy. With the exception of the word "nonexclusive" being written on defendant's copy by the plaintiff (according to the plaintiff's testimony) after she received her copy, the listing agreement was filled out all in one motion. The defendant's copy was also an original.

Under Rule 1004(1), supra, the defendant could prove the contents of her copy of the listing agreement by her testimony and by Van Lueschene, who testified that he saw plaintiff

-22-

write "nonexclusive" on the defendant's copy. The only question for the trial court to determine under this rule was whether defendant threw away her copy in bad faith after she claimed it was made worthless by the vandals. If the court ruled she did it in bad faith, it would rule that she could not introduce through her testimony and that of Van Lueschene, evidence of the contents of this listing agreement. But if it ruled that she was in good faith when she threw away the listing agreement, evidence of the contents of her listing would be permitted. In any event, this would be a question of fact for the trial court to first determine.

If the trial court ruled defendant was not in bad faith in throwing away her copy of the listing agreement, she could testify, and so could witness Van Lueschene, to its contents—that plaintiff wrote the word "nonexclusive" on her copy. The trial court was not, of course, required to believe either the defendant or Van Lueschene. But if he did, it would be a devastating admission against plaintiff's interest, for it would flatly contradict his claim that he had an "exclusive" listing. Nonetheless, once evidence of the contents of both these writings were in evidence, a flat contradiction arose. In this situation, the trial court undoubtedly would have the right to hear evidence from both sides as to the circumstances surrounding the execution of the listing agreements. The trial court would well decide either way depending on whose version of the facts it believed. In any event, the parol evidence rule would not prevent introduction of evidence to explain the contradiction existing between the two listing agreements. Both of them could not be right.

For the reasons stated, I would vacate the judgment and remand for a new trial.

Justice

-23-